UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA BARNETT,<br><br>    Plaintiff,<br><br>    v.<br><br>XAVIER BECERRA, et al.,<br><br>    Defendants. | Case No. 17-cv-05514-SI<br><br>**ORDER GRANTING IFP APPLICATION, DISMISSING AMENDED COMPLAINT, AND DENYING MOTIONS FOR APPOINTMENT OF COUNSEL**<br><br>**RE: DKT. NOS. 6, 8, 11, 12** |

Plaintiff Melissa Barnett is representing herself *pro se*. The Court previously denied plaintiff's application to proceed in forma pauperis (IFP) as incomplete, denied the motion for appointment of counsel, and dismissed the complaint with leave to amend. Dkt. No. 5. Plaintiff has now filed an amended application to proceed IFP, two amended motions for appointment of counsel, and an Amended Complaint. Dkt. Nos. 6, 8, 11, 12.

Having reviewed plaintiff's amended IFP application, the Court determines that plaintiff has met the standard for proceeding IFP and GRANTS the application. *See* Dkt. No. 6. However, the Court further finds that the Amended Complaint fails to state a claim for which relief can be granted. For the reasons stated below, the Court DISMISSES the Amended Complaint without leave to amend and DENIES plaintiff's motions to appoint counsel.

## BACKGROUND

For purposes of reviewing the sufficiency of plaintiff's Amended Complaint, the Court treats all of the allegations in the Amended Complaint as true. The events that led to this lawsuit largely arise from plaintiff's dissolution proceedings against her ex-husband, John Heflebower,

and the discrimination plaintiff alleged she experienced in the court proceedings that followed.[1] Heflebower was emotionally, financially, sexually, and physically abusive to plaintiff. Dkt. No. 12, Amended Complaint ("AC") at 25.[2] Heflebower was also emotionally abusive to plaintiff's children.[3] *Id.*

Barnett filed for dissolution in 2005. *Id.* Judge Francisca Tisher of Napa County Superior Court awarded partial custody to Heflebower.[4] *Id.* In 2006, plaintiff filed for a restraining order, which Judge Michael Williams denied. *Id.* Not long after, "stay away orders which applied to both parties" were issued. *Id.* at 25-26. In 2006, the divorce was finalized, but Heflebower "continue[d] to use the court to harm Barnett . . ., filing frivolous and fraudulent claims, each time gaining more time with [their] child, getting contempt charges[,] etc." *Id.* at 26. Plaintiff had at least three different attorneys through these proceedings: James Jones, Anne Holland, and Kathleen Smith. *See id.* at 26-27. In or around 2009, Judge Mark Boesnecker awarded Heflebower full custody, after a hearing in which plaintiff was not allowed to cross-examine minor's counsel Ann Laning. *Id.* at 27. Plaintiff had visitation rights every other weekend. *Id.* She filed for reconsideration and Judge Diane Price refused her request. *Id.* In April 2010, plaintiff was put on supervised visitation until the next court hearing in October 2010. *Id.* at 27-28. At some point after October 2010 the Family Court ordered no contact between plaintiff and the child. *Id.* at 28. "[T]his order has continued through 2017." *Id.* Plaintiff has "tried returning

---

[1] This Order refers to "plaintiff" as Melissa Barnett. Plaintiff Barnett also files this action as next friend of her minor child, "S." Federal Rule of Civil Procedure 17(c)(2) states that "[t]he court must appoint a guardian ad litem . . . to protect a minor . . . who is unrepresented in an action." Barnett did not seek, and the Court did not appoint, a guardian ad litem for S. Because there is no guardian ad litem appointed in this case, this Order does not refer to "plaintiffs" in the plural. However, even if the Court had appointed a guardian ad litem for S., that would not affect the Court's ruling today that the Amended Complaint must be dismissed.

[2] Because the paragraph numbering repeats with each new section and at times is out of order, the Court cites to the Amended Complaint by page number rather than by paragraph number.

[3] The Amended Complaint confusingly refers at various points to plaintiff's "children" and at other times to a "child," presumably "S."

[4] The Amended Complaint identifies this judge as "Franchesca Tisher," but the Court will presume that plaintiff means former Presiding Judge Francisca Tisher.

to court several times with the same outcome." *Id.*

Despite the no-contact order, Heflebower was still "allowing" contact between plaintiff and the child. *Id.* In 2014, "S" accidentally ate a marijuana candy bar from the father's freezer. *Id.* Plaintiff took "S" to the emergency room for treatment. The doctor called Child Protective Services "and spoke with mother in a disparaging way both in[]front of the child and staff." *Id.* Following this incident, the father "'allowed' minor plaintiff to return to mother[']s home." *Id.* The following week, he filed a kidnapping report. When plaintiff voluntarily went to the St. Helena Police Department to speak with them, she "was detained and assaulted by Police officer Biden and Police Chief Ruben." *Id.* The District Attorney's office "pressed charges against both Heflebower and Barnett, offering a plea deal to Heflebower that included filing a Domestic Violence Restraining Order." *Id.* When plaintiff, unaware of the filing, violated the order, she was charged with five counts. *Id.* The Public Defender's office "was disparaging and failed to protect her rights[,] acting both unethically and unprofessionally." *Id.*

On September 22, 2017, plaintiff filed this lawsuit against twenty-four defendants, seeking relief under (1) Titles II and III of the Americans with Disabilities Act ("ADA") and (2) Section 504 of the Rehabilitation Act. Dkt. No. 1. Reviewing the complaint under 28 U.S.C. § 1915(e), the Court dismissed the complaint with leave to amend and instructed plaintiff to "describe[e] what events plaintiff is challenging as unlawful, when the events occurred, and which defendants are alleged to have committed the acts." Dkt. No. 5 at 5. The Court also cautioned that some of the defendants may be immune from liability. *Id.* at 3. The Court denied plaintiff's motion for appointment of counsel without prejudice. *Id.* at 4.

Plaintiff filed a partial amended complaint on October 23, 2017, and requested an extension of time to complete her amendment. The Court granted plaintiff's motion for an extension of time and plaintiff filed the Amended Complaint, which is now the operative complaint in this case, on November 27, 2017. Dkt. Nos. 10, 11. The sixty page Amended Complaint adds a third claim for relief for "Sex Discrimination Violations of State Constitution." AC at 50. Plaintiff seeks damages in excess of $17 million each for her and for "S," civil penalties, declaratory and injunctive relief. *Id.* at 58-59. Plaintiff sues thirty-one defendants:

3

California Attorney General Xavier Becerra, Chief Justice of the California Supreme Court Tani Cantil-Sakauye, six judges or commissioners of Napa County Superior Court, the Napa County District Attorney, the Napa County Public Defender, the Napa County Department of Health and Human Services, St. Helena Hospital, the St. Helena Police Department, the St. Helena Unified School District, the Napa County Bar Association, Napa Emergency Women's Services, Cope Family Services, independent mental health provider Doris Pick, six attorneys, Woodland Star Charter School, Merrill Lynch, Napa Legal Aid Services, Family Court Services, Association of Family and Conciliation Courts (AFCC), AFCC California Chapter, and Senator Kamala Harris. AC at 1-2, 10-19.

Plaintiff has also filed an amended IFP application and two amended motions to appoint counsel. Dkt. Nos. 6, 8, 12.

## LEGAL STANDARD

The statute that authorizes courts to allow lawsuits to proceed without prepayment of the filing fees also requires the Court to "dismiss the case at any time if the court determines that – . . . the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). For purposes of 28 U.S.C. § 1915, a frivolous claim is one that lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To state a claim for relief, the complaint must contain "a short and plain statement showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5]

In the Ninth Circuit, courts "construe *pro se* filings liberally when evaluating them under *Iqbal*. While the standard is higher, our 'obligation' remains, 'where the petition is *pro se*,

---

[5] "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted).

4

particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773, F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)). However, a court will not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The district court must provide the *pro se* plaintiff notice of the deficiencies of his or her complaint prior to dismissal, but a *pro se* plaintiff must still allege facts sufficient to allow the reviewing court to conclude a claim has been stated. *Ferdik v. Bonzelet*, 963 F.3d 1258, 1261 (9th Cir. 1992); *Ivey,* 673 F.3d at 269.

## DISCUSSION

### I. Amended Complaint

In amending the complaint, plaintiff largely followed the Court's instruction to add more detail regarding what happened, when, and by whom. However, although the complaint has nearly doubled in length, it is now apparent that it fails to state a claim. Plaintiff has failed to allege any facts that connect what occurred to violations of the laws under which she is suing. Where plaintiff has added facts, those facts now show that there is no legally cognizable claim and that the Court is without power to grant the relief sought. The Amended Complaint also suffers from additional defects that the Court will explain below.

#### A. The Amended Complaint States Conclusions, Not Underlying Facts.

In addition to the facts already described, plaintiff has alleged the following. Plaintiff was perceived by defendants as having a mental illness. AC at 3. "Defendants acted on assumption and sex-based stereotypes about Plaintiffs' disabilities . . . and failed to apply individualized assessments as required by the Americans with Disabilities Act or to analyze or provide appropriate accommodative services and supports in consideration of those disabilities." *Id.* (underlining omitted). "Moreover, Defendants exploited Plaintiff's disabilities and likely retaliated against her for exercising her lawful right to request accommodation[s]. These sex based crimes violate State Constitutional law." *Id.* (underlining omitted). "Plaintiffs were denied

5

the right to present their case without intimidation and denied access to the justice system, denied access to affordable accommodations and denied equal access and due process because of plaintiff mother's status as a woman as a matter of practice and culture, de facto, women do not have equal rights." *Id.* at 5 (underlining omitted). The Amended Complaint further alleges that at the April 2010 hearing, "ADA accommodation[s] were filed, Judge Price spoke about accommodations in open court, court denied representation and services . . . ." *Id.* at 27. Plaintiff also alleges, "The State of California and its agencies were inaccessible to Plaintiff Melissa Barnett and her children." *Id.* at 31 (underlining omitted).

In this way, the Amended Complaint states conclusions, not facts. Plaintiff has not connected the facts that underlie her claim with violations of disability or sex discrimination laws. In evaluating whether a complaint states a claim for relief, the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The complaint must do more than allege "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal alteration and quotation marks omitted). The Amended Complaint does not do so, and what factual enhancement has been added since the original complaint shows that plaintiff has no viable claim.

**B.     The Amended Complaint Fails to State a Claim for Disability Discrimination.**

Title II of the ADA, 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 et seq., prohibit discrimination on the basis of a disability in the programs, services, or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Nowhere in the sixty-page Amended Complaint does plaintiff explain what accommodations she requested or what accommodations were denied. It may be that plaintiff is

alleging that she was entitled to a court-appointed attorney at her April 2010 hearing as an accommodation for her disability. Her prayer for relief includes a request that the Court "[e]njoin Defendants . . . from engaging in discriminatory policies and practices against individuals based on their disabilities" and "[o]rder Defendants to modify their policies, practices, and procedures as necessary to bring them into compliance with" Titles II and III of the ADA and Section 504 of the Rehabilitation Act. If plaintiff is asking the Court to provide federal oversight over state court decisions of whether to appoint counsel for disabled individuals in their Family Court cases, the Court would need to abstain from hearing this case. *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 790 (9th Cir. 2014) (stating that abstention "is appropriate where the relief sought would require the federal court to monitor the substance of individual cases on an ongoing basis to administer its judgment") (citing *O'Shea v. Littleton*, 414 U.S. 488 (1974); *E.T. v. Cantil-Sakauye*, 682 F.3d 1121 (9th Cir. 2011) (per curiam)); *see also Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992) ("We should be very reluctant to grant relief that would entail heavy federal interference in such sensitive state activities as administration of the judicial system") (citations omitted). However, it is not clear to the Court that this is even what plaintiff is asking. She also asserts that "Judges Tisher, Williams, Boesnecker[,] Price, Ortiz and Langhorn violated ADA acts and accommodation[s], [by] not allowing accommodation[s], or failing to provide [accommodations.]" AC at 29. However, the Amended Complaint only states that she was unrepresented in Judge Price's and Judge Boesnecker's courtrooms.[6] *See id.* at 27. Elsewhere in the Amended Complaint, plaintiff states that she was represented by various attorneys for at least a year. *See id.* at 26-27.

It is further unclear to the Court that Title III of the ADA applies to plaintiff's claims. Title III allows claims against private individuals or entities for denial of access to public accommodations run by those individuals. *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000); *see also* 42 U.S.C. § 12182(a). The statute defines which private entities are considered public accommodations under Title III. 42 U.S.C. § 12181(7). With two possible

---

[6] The Amended Complaint names the Honorable Monique Langhorn as a defendant but does not describe how Commissioner Langhorn was involved in the events at issue.

exceptions, none of the events that plaintiff alleges in the Amended Complaint appears to have taken place in a public accommodation. Plaintiff describes one incident—after her child accidentally ate a marijuana candy bar—that took place at a hospital, which is a place of public accommodation. *See* 42 U.S.C. § 12181(7)(F). However, plaintiff's allegations—that the doctor called CPS, spoke to plaintiff in a disparaging way, and "ordered guards to watch over the child until father arrived"—do not show that the hospital denied plaintiff access to its services. *See* AC at 28. Second, in her Amended Complaint, plaintiff has added Merrill Lynch as a defendant. A bank is also a place of public accommodation. *See* 42 U.S.C. § 12181(7)(F). But plaintiff makes no specific allegations against Merrill Lynch, nor does she describe what Merrill Lynch did or what events occurred in a bank.

### C. The Amended Complaint Fails to State a Claim for Sex Discrimination.

In her Amended Complaint, plaintiff adds a third claim, for "Sex Discrimination Violations of State Constitution."[7] Plaintiff states that defendants violated Article 1, section 8, of the California Constitution. AC at 51.

As the allegations illustrate, plaintiff's sex discrimination claim appears to be intertwined with the disability claim. *See, e.g.,* AC at 3 (alleging that defendants exploited plaintiff's disabilities and retaliated against her for requesting accommodations and that "[t]hese sex based crimes violate State Constitutional law"), 5 (alleging that plaintiff was denied access to accommodations because of her status as a woman). Again, plaintiff does not connect the facts of what she says happened to her with any legal violation of sex discrimination laws. Plaintiff devotes much of the Amended Complaint to an attack on the federal government's "Fatherhood" initiative. She notes that while there is a fatherhood.gov website, there is no motherhood.gov or

---

[7] The Amended Complaint also repeatedly cites to Federal Rule of Civil Procedure 5.10. The Court concludes this is an error, because Rule 5.10 does not exist, and that plaintiff means to cite to Rule 5.1, "Constitutional Challenge to a Statute." However, from what the Court understands of plaintiff's claims, plaintiff is challenging the way that she was discriminated against in state court. Plaintiff cites FRCP 5.10 as "constitutional challenge to the California Court System." *See, e.g.*, AC at 10-12. Because the "California Court System" is not a state or federal statute, it does not appear that FRCP 5.1 applies in this case.

8

1    parenthood.gov. AC at 5. She alleges that "Plaintiff[s] were denied equal access to grants and
2    funds[,] specifically fatherhood funding[,] second chance funding, access to visitation and
3    reunification programs and funding of other Health and Human Service[s] Programs. Plaintiffs
4    became sexual discrimination victims of a media campaign regarding fatherlessness, and Parental
5    Alienation which identified men as victims of systematic gender/sex bias while blaming single
6    mothers . . . ." *Id.* at 32 (underlining omitted). She later states, "The lack of legal representation
7    in custody cases constitutes sex discrimination." *Id.* at 33 (underlining omitted).

As an initial matter, it appears that plaintiff has cited the wrong provision of California law. Article I, section 8, of the California Constitution, under which plaintiff is suing, states, "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." Plaintiff has not alleged that she was disqualified from a "business, profession, vocation, or employment." She is challenging systemic discrimination in the state courts against mothers, particularly mothers with disabilities.

Even if plaintiff had cited her sex discrimination claim correctly, plaintiff has failed to allege what funding or services fathers are provided that she was not provided as a mother. It appears that she may be alleging that the State of California denied her request for appointed counsel because she was a mother rather than a father. As with the disability claim, however, plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). She has not connected the events that she says occurred with any violation of sex discrimination laws.

### D. The Amended Complaint Seeks Relief Against Certain Defendants Who Are Immune and Seeks Relief That This Court Cannot Grant.

The Amended Complaint suffers from numerous additional defects. In its prior Order dismissing plaintiff's complaint with leave to amend, the Court informed plaintiff that she needed to provide information about which defendants committed the acts alleged. Dkt. No. 5 at 4. Courts consistently conclude that "[u]ndifferentiated pleading against multiple defendants is

9

improper." *See Corazon v. Aurora Loan Servs., LLC*, No. 11-00542 SC, 2011 WL 1740099, at *4 (N.D. Cal. May 4, 2011) (citation omitted); *see also Fagbohunge v. Caltrans*, No. 13-cv-03801-WHO, 2014 WL 644008, at *3 n.4 (N.D. Cal. Feb. 19, 2014) (reasoning that a "general allegation regarding 'defendants' is [] insufficient on its face because it does not identify which specific defendants"). Here, plaintiff continues to use improper group pleading. Plaintiff repeatedly refers to "defendants" as a group. *See, e.g.,* AC at 21 ("Defendants did not refer Plaintiffs to a disability accommodations coordinator at the courthouse or at any other location . . ."), 33 ("Defendants violated the California Constitution, Article I, 8 (1879) when plaintiff entered court."). She did not correct this deficiency when amending her complaint.

As to certain defendants for whom plaintiff did add further detail when amending, the allegations now make clear that they are immune from suits for damages. For instance, plaintiff has added further allegations regarding the timeline of events that occurred during her dissolution proceedings and in the custody dispute that followed. These allegations show that the Napa County Superior Court judges whom plaintiff is suing were acting in their judicial capacities. The only events that plaintiff describes involving these defendants are actions they took as judges during state court proceedings, for example by denying motions for restraining orders or making custody rulings. *See* AC at 25-29. As the Court previously informed plaintiff, a state judge is absolutely immune from civil liability for damages for acts performed in his or her judicial capacity. *See Pierson v. Ray*, 386 U.S. 547, 553-55 (1967).

Finally, the Court is not able to provide certain relief that plaintiff seeks. Plaintiff seeks an order from the Court to enforce plaintiff's divorce decree of 2006 and asks for declaratory relief that "orders made after 2006 [be] declared void." AC at 59. In essence, from what the Court can understand, plaintiff is asking this Court to reverse prior orders of the Napa County Superior Court awarding child custody to plaintiff's former spouse and to award custody to plaintiff instead. This Court does not have the power to enter such an order. Federal district courts, as courts of original jurisdiction, may not review the final determinations of state courts. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) (district courts may not exercise appellate jurisdiction over state courts). Accordingly, the *Rooker-*

*Feldman* doctrine bars an action in which a party essentially asks the federal court to review the state court's decision and afford that party the same remedy he was denied in state court. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) (citing *Feldman*, 460 U.S. at 483 n.16 & 485). The *Rooker-Feldman* doctrine applies even when the state court judgment is not issued by the highest state court, *see Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986), and when federal constitutional issues are at stake, *see Branson v. Nott*, 62 F.3d 287, 291-92 (9th Cir. 1995); *Mullins v. Oregon*, 57 F.3d 789, 792 (9th Cir. 1995).

The Court is not unsympathetic to the type of claim plaintiff raises. Plaintiff has stated that custody of her child was given to an abusive father, that the father was represented by counsel and she was not, and that she either has or was perceived as having a disability that caused discrimination against her, both for her disability and because she is a woman. The Court has not heard the other side of the matter, but these are a sad set of allegations.

However, this Court is unable to fix plaintiff's situation. The Court has described above the numerous deficiencies in the Amended Complaint and why it cannot allow this case to move forward. Further leave to amend will not be granted because it would be futile; the Court already explained in its prior Order what the plaintiff needed to allege to state a claim. *See* Dkt. No. 5. The Amended Complaint either did not address the deficiencies the Court identified or else the detail provided shows that there is no claim there.

## II. Motions for Appointment of Counsel

Plaintiff has also filed two amended motions to appoint counsel. Dkt. Nos. 8, 12. The Court notes that another federal district court, reviewing two IFP complaints very similar to this one, granted the plaintiffs' motions to appoint counsel.[8] *See Sanchez v. Washington*, No. 17-cv-1669 (D. Or. Oct. 20, 2017); *Bunnel v. Rosenblum*, No. 17-cv-1786 (D. Or. Nov. 7, 2017). In *Sanchez*, two pro bono appointed attorneys requested termination of the appointment, citing lack

---

[8] These are two cases that plaintiff states on the cover page of her Amended Complaint are "filed in association with" this case. *See* AC at 1.

11

of familiarity with these types of lawsuits.[9] In *Bunnel*, two appointed attorneys also withdrew for the same reasons. The district court thereafter stated that it would not appoint additional attorneys; both plaintiffs are now proceeding with their lawsuits *pro se*. In light of this, the Court has serious doubts that a lawsuit of this type is amenable to appointment of counsel. More importantly, plaintiff's motions to appoint counsel require, in part, that the Court consider the likelihood of success on the merits. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). As explained above, the Court has found that plaintiff's lawsuit is unlikely to succeed. Plaintiff's motions to appoint counsel are DENIED.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS plaintiff's application to proceed IFP, DISMISSES the Amended Complaint without leave to amend, and DENIES plaintiff's motions to appoint counsel.

**IT IS SO ORDERED**.

Dated: February 26, 2018

SUSAN ILLSTON
United States District Judge

---

[9] The district court appointed a third pro bono attorney, who requested termination of the appointment due to a past personal relationship with one of the defendants.

12